IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Case No. 4:14CV3206 |
| | ) | |
| KORLEY B. SEARS, | ) | BK 10-40277 (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

MEMORANDUM AND ORDER

This is an appeal from a judgment entered by the United States Bankruptcy Court for the District of Nebraska on August 29, 2014, in a Chapter 11 proceeding (*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 405). The bankruptcy court granted summary judgment in favor of the appellees/claimants, Rhett R. Sears and Rhett R. Sears Revocable Trust (collectively, "Rhett"), Ronald H. Sears and Ronald H. Sears Trust (collectively, "Ron"), and Dane Sears ("Dane"), and allowed their claims over the objections of the debtor/appellant, Korley B. Sears ("Korley"). Having carefully reviewed the parties' briefs and the designated record on appeal,[1] I conclude that the bankruptcy court's judgment should be affirmed.

*I. Background*

The facts of the case, as summarized by the bankruptcy court in a memorandum and order that was also entered on August 29, 2014, are as follows:

> The claimants in this case, who are members of the debtor's family, sold their interests in AFY, Inc., a company that operated a cattle feedyard, to the corporation and to Korley Sears in 2007 in exchange for promissory notes from Korley and a security interest in the shares. In

---

[1] I find that oral argument is not needed because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b)(3).

2010, AFY and Korley each filed for bankruptcy protection. The claimants filed proofs of claim for more than $5.3 million in AFY's bankruptcy case for the amounts owed to them for the sale of their stock. AFY's two shareholders, Korley and Robert Sears, objected to the claims, arguing that only Korley and not AFY was liable for the debt. After a hearing on affidavit evidence, the claim objections were overruled. The court found that the contract for the sale of the claimants' interest clearly and unambiguously showed that both AFY and Korley were the purchasers. The claimants' proof of claim was entitled to prima facie validity, and no evidence was presented to challenge either AFY's liability on the debt or the amount of the claims. There also was no evidence to support Robert and Korley's theory that the claimants had breached the contract, thereby excusing AFY's performance and liability. On appeal, the Bankruptcy Appellate Panel affirmed the decision of the bankruptcy court, holding that AFY was liable for the debt under the unambiguous terms of the stock sale contract, the amount of the debt was undisputed, and Robert and Korley's defenses were unavailing. *Sears v. Sears (In re AFY, Inc.)*, 463 B.R. 483 (B.A.P. 8th Cir. 2012). Robert and Korley then appealed to the Eighth Circuit, which dismissed the appeal without reaching the merits after finding that neither of them had standing to appeal because they held, at most, only a derivative interest and were not "persons aggrieved" as they would not be directly and adversely affected pecuniarily by the bankruptcy court's order. *Sears v. Sears (In re AFY, Inc.)*, 733 F.3d 791 (8th Cir. 2013). The rulings left intact the substance of the underlying bankruptcy court orders.

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 403, at CM/ECF p. 1). The claimants filed similar proofs of claim in Korley's bankruptcy case.

In AFY's bankruptcy case, Korley and Robert Sears ("Robert") filed the following objections to the claims of Ron, Rhett, and Dane:

1.     Claims Nos. 8, 9, and 10 of Ron, Rhett, and Dane (collectively "Sears Family Claimants") are unenforceable against AFY or its property and do not state any claims for which relief can be granted.

2.  By Claims Nos. 8, 9, and 10, the Sears Family Claimants seek to recover from AFY's estate based on the Resolution for Stock Redemption contained in AFY's 2008 Minutes of its annual meeting (the "Resolution") being an enforceable contract. The Resolution is not an enforceable contract.

3.  The Claims of the Sears Family Claimants are based upon the Sears Family Claimants being third party beneficiaries of the Resolution. The Sears Family Claimants are at most incidental beneficiaries of the Resolution and not creditor third party beneficiaries of the Resolution.

4.  Alternatively, even if the Resolution is an enforceable contract in which the Sears Family Claimants are creditor third party beneficiaries, which Robert and Korley expressly deny, the Sears Family Claimants materially breached the Sears Family Claimant's implied duties of good faith and fair dealing in the performance and enforcement of that contract, thus excusing AFY from any performance and discharging AFY from any liability. Such duties of good faith and fair dealing required the Sears Family Claimants not to do anything that injured the right of AFY to receive the benefit of such contract. The Sears Family Claimants breached such duties by opposing all the efforts of AFY to effect a Chapter 11 plan and by collaborating with the Chapter 11 Trustee that the Sears Family Claimants had caused to be appointed.

5.  Alternatively, even if the Resolution resulted in the Sears Family Claimants being creditor third party beneficiaries under an enforceable contract, which Robert and Korley expressly deny, the Sears Family Claimants materially breached the contract by unjustifiably preventing, hindering, making impossible the performance by AFY of its obligations under the contract by opposing all efforts of AFY to effect a Chapter 11 plan, and by collaborating with the Chapter 11 Trustee that the Sears Family Claimants had caused to be appointed.

-3-

6.     By Claims Nos. 8, 9, and 10, the Sears Family Claimants seek to recover from AFY's estate based upon a Stock Sales Agreement under which the Sears Family Claimants sold their shares of stock in AFY to Korley. AFY purchased no shares of stock in AFY under the Stock Sales Agreement and received none from the Sears Family Claimants. Moreover, after the closing of the Stock Sales Agreement, the Stock Sales Agreement was no longer an enforceable agreement either because it was merged into the promissory notes described below in Paragraph 7, or otherwise.

7.     By Claims Nos. 8, 9, and 10, the Sears Family Claimants seek to recover from AFY's estate based on Promissory Note(s) dated June 22, 2007 in the original principal amounts of their respective Claims. AFY was not a party to any of those Promissory Notes and did not sign on any of those Promissory Notes. The Nebraska Uniform Commercial Code in §3-401 provides that a person is not liable on notes such person did not sign, nor was AFY obligated under the Stock Sales Agreement to sign any of those notes.

8.     The parol evidence rule, which is a rule of substantive law, not evidence, bars any claim that AFY is liable on any of the Promissory Notes.

9.     The Statute of Frauds in Neb. Rev. Stat. 36[-]202(2), bars proof that AFY is liable on any of the Promissory Notes.

10.    The Sears Family Claimants hold no security interest or liens on any right of Korley to enforce the Resolution.

11.    Allowance of Claims Nos. 8, 9, and 10, which are for stock in AFY and not for goods or services furnished to AFY, but are for sales of equity in AFY, would pay equity ahead of debt, or would pay some equity ahead of other equity. That is contrary to bankruptcy law.

12.    As of the time of the Resolution in 2008, the directors and shareholders of AFY intended to redeem from Korley the shares Korley owned and retire shares Korley had purchased in 2007

from the Sears Family Claimants. The directors and members of AFY had no intention to confer any enforceable rights or benefits on the Sears Family Claimants.

13. The principal purpose of any contract that resulted from the Resolution was frustrated by the acts and omissions of the Sears Family Claimants, and when any contract resulting from the Resolution was made, neither AFY, Robert, Korley, nor Ron, Rhett, or Dane contemplated the subsequent events, including without limitation, withdrawal of AFY's operating line of credit, a bankruptcy case, conversion of AFY's Chapter 11 case to Chapter 7, or liquidation of AFY's bankruptcy estate.

(*In re AFY, Inc.*, Bankruptcy Case No. 10-40875, Doc. 366, at CM/ECF pp. 2-4).

In overruling these objections, the bankruptcy court stated:

The Sears Family Members filed their claims for sums due pursuant to a June 20, 2007, Stock Sale Agreement. The claim is made as both a direct obligation under the agreement and related documentation, and as third-party beneficiaries of an agreement between AFY and Korley Sears.

Robert and Korley's objection to the Sears Family Members' claims was filed "on Behalf of AFY's Estate, Themselves, and Their Estates." They believe that the Sears Family Members' claims should be disallowed in their entirety because, according to Robert and Korley, AFY is not liable for any sums due under the Stock Sale Agreement. Specifically, only Korley signed the promissory notes resulting from the Stock Sale Agreement. Robert and Korley feel that the Stock Sale Agreement should be interpreted on its face and that parol evidence should not be used. As an alternative theory, Robert and Korley argue that even if AFY had some liability to the Sears Family Members under the agreement, they breached their implied duties of good faith and fair dealing in the performance and enforcement of that contract, thus excusing AFY from performance and liability. The asserted breach was by opposing the early efforts of AFY in this Chapter 11 case and collaborating with the Chapter 11 trustee.

-5-

The trustee has *not* joined in Robert and Korley's objection.

As a threshold matter, it is clear that Robert and Korley do not have standing as purported shareholders of AFY to make objections on behalf of AFY's estate. The trustee has been appointed to administer the bankruptcy estate and is the only person authorized to take action on behalf of the estate. On the other hand, Robert and Korley may act in their individual capacities. A party in interest, including a creditor and an equity security holder "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Accordingly, Robert and Korley have standing to object to the Sears Family Members' claims on their own behalf.

Addressing the merits of the objection, the proof of claim attaches a June 20, 2007, Stock Sale Agreement, which agreement is signed by, among others, the Sears Family Members as sellers and AFY, Inc. (by Robert A. Sears as president and Korley B. Sears as vice president), and Korley B. Sears, as buyers. The first paragraph of the agreement identifies each of the sellers and the number of shares of AFY that each seller is selling. Paragraph 2 states in its entirety:

> 2. Buyers. The Buyers purchasing all interests described in paragraph 1 from the Sellers are AFY, Inc., a Nebraska corporation formerly known as Ainsworth Feed Yards Company, Inc., and Korley B. Sears.

Paragraph 4 describes the sale price "to be paid by Buyers to Sellers . . ." and the manner in which the payment will be made.

Paragraph 7.1 provides in pertinent part that "the Buyer(s) shall execute, for each Seller, a Promissory Note, and a Pledge and Security Agreement."

As it turned out, the promissory notes executed pursuant to paragraph 7.1 of the agreement were executed only by Korley, and not by AFY.

-6-

Interestingly, all parties assert that the Stock Sale Agreement is clear and unambiguous on its face. The Sears Family Members point out the foregoing provisions which identify AFY, Inc. as a buyer along with Korley. Mr. Strasheim [the attorney representing Korley Robert] argues that the agreement requires the "Buyer(s)" to execute a promissory note, and only Korley executed a note. Therefore, he believes the agreement is clear that AFY is not a buyer since it did not execute a note.

I agree with the claimants that the contract is clear and unambiguous, and that AFY is a "Buyer" under the Stock Sale Agreement. In fact, it is hard to imagine a contract being more clear and unambiguous than this one which, in paragraph 2, defines "Buyers" as "AFY, Inc., a Nebraska corporation formerly known as Ainsworth Feedyards Company, Inc., and Korley B. Sears." It is not necessary to look to extrinsic documents, such as the promissory notes and corporate resolutions, to determine that AFY is a buyer under the contract having liability for the purchase price. Also attached to the proof of claim were certain minutes of a 2008 annual meeting of the shareholders of AFY. Those shareholder minutes clearly establish a subsequent agreement to redeem the shares involved in the transaction, but do not alter who is contractually liable to pay to the sellers the purchase price for the shares under the Stock Sale Agreement.

Accordingly, the proof of claim filed by the Sears Family Members is entitled to prima facie validity. *Dove-Nation v. eCast Settlement Corp.* (*In re Dove-Nation*), 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004); Fed. R. Bankr. P. 3001(f). Robert and Korley's objection fails to overcome the presumption of validity. Absolutely no evidence was presented to support the theory that AFY is not liable for the purchase price. Further, absolutely no evidence was presented to dispute the balance due to each of the claimants. Finally, no evidence was presented to support the assertion that the Sears Family Members had or breached any duty in failing to support Robert and Korley's efforts and in supporting the efforts of the trustee. *McDaniel v. Riverside Cnty. Dep't of Child Support Servs.* (*In re McDaniel*), 246 B.R. 531, 533 (B.A.P. 8th Cir. 2001) ("substantial evidence" is required to rebut proof of claim's presumptive validity); *Vomhof v. United States*, 20 B.R. 191, 192 (D.

-7-

Minn. 1997) ("Substantial evidence to support an objection requires financial information and factual arguments, not legal rhetoric.")

(*In re AFY, Inc*., Bankruptcy Case No. 10-40875, Doc. 493, at 4-5) (emphasis in original; footnote omitted).[2]

On appeal, the Bankruptcy Appellate Panel "agree[d] with the bankruptcy court's determination that Robert and Korley failed to overcome the presumptive validity of the proofs of claim filed by the Sears Family Members," *In re AFY, Inc.*, 463 B.R. 483, 489 (B.A.P. 8th Cir. 2012), and concluded that "[t]he plain language of the Stock Sales Agreement imposes liability on the Debtor for the deferred purchase price and the Debtor's liability was not discharged under any of the defenses submitted by Robert and Korley," *id.* Regarding AFY's liability, the panel stated:

> The parties agree that the Stock Sale Agreement is the controlling document, that it is unambiguous and that Nebraska law governs. The

---

[2] Korley filed a claim in AFY's bankruptcy case which was objected to by Rhett, Ron, and Dane. The bankruptcy court sustained the objections and denied the claim, stating:

> Korley filed a proof of claim, No. 26 on the claims register, in the amount of $5,325,291.16 [the aggregate amount claimed by Rhett, Ron, and Dane]. Korley asserts it is a contingent claim under which he believes he is entitled to recover the purchase price for the shares from AFY instead of from the Sears Family Members. Korley presents absolutely no legal basis as to why he would be able to do so....

> The bottom line is that, on its face, the proof of claim filed by Korley fails to present or identify any basis to find that AFY is indebted to Korley in such amount. Absent such supporting information, the claim is not entitled to prima facie validity.

(*In re AFY, Inc*., Bankruptcy Case No. 10-40875, Doc. 493, at CM/ECF p. 5). On appeal, the Bankruptcy Appellate Panel "agree[d] with the bankruptcy court's assessment that on its face, Korley's proof of claim provided absolutely no legal basis for liability by the Debtor." *In re AFY, Inc.*, 463 B.R. 483, 489 (B.A.P. 8th Cir. 2012). The panel stated that "[a]lthough the alleged basis for Korley's Claim No. 26 is difficult to decipher, Robert and Korley describe it as a contingent claim by which 'if there was a contract by the corporate resolution to redeem the stock of Korley, he has greater rights to payment by [the Debtor] on the claims aggregating $5,325,291.16 than do [the Sears Family Members].'" *Id.*

-8-

parties disagree, however, regarding whether the Debtor is liable under the agreement. According to Robert and Korley, the "the unambiguous Stock [Sale] Agreement on which [the Sears Family Members] base their claim[s] does not provide that [the Debtor] has any ... liability." The Sears Family Members maintain, however, that the Stock Sale Agreement plainly provides that the Debtor is liable for the deferred purchase price.

We review the bankruptcy court's interpretation of the unambiguous contract de novo and we do not consider extrinsic evidence of intent. *See ABC Elec., Inc. v. Neb. Beef Ltd.*, 249 F.3d 762, 766–67 (8th Cir. 2001); *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416, 422 (2010) ("A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms."). The fact that each party claims the Stock Sale Agreement unambiguously supports its position does not preclude us from finding unambiguity. *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1041 (8th Cir. 2000) (citation omitted); *Davenport*, 780 N.W.2d at 422 ("A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous.").

The bankruptcy court agreed with the parties that the Stock Sale Agreement is unambiguous. It also agreed with the Sears Family Members that the Debtor was liable as the "Buyer" under the agreement. We agree with the bankruptcy court. In the plainest of language, Paragraph 2 defines the Debtor as one of the buyers. In Paragraph 4, it explains that the purchase price is "to be paid by Buyers to Sellers...." Likewise, the Debtor signed the Stock Sale Agreement as a buyer.

Among other arguments, Robert and Korley maintain that by using the term "Buyer(s)," the Stock Sale Agreement did not require both Korley and the Debtor to sign promissory notes and it only imposes liability for the purchase price on the person or entity who does sign a promissory note. [FN3. One of the other arguments made by Robert and Korley is that the reading of the Stock Sale Agreement requested by the Sears Family Members requires this Court to look at Paragraphs 2 and 4 in isolation and would change the meaning of the agreement as a

-9-

whole. We disagree. Paragraphs 2 and 4, imposing liability on the Debtor, are consistent with the agreement in its entirety.] Paragraph 7 of the Stock Sale Agreement explains that "Buyer(s) shall execute, for each Seller, a Promissory Note and a Pledge and Security Agreement." According to Robert and Korley, the Debtor is not liable to the Sears Family Members because only Korley, and not the Debtor, executed promissory notes.

We disagree. The four corners of the Stock Sale Agreement unambiguously provide that the Debtor is liable thereunder. Nowhere does the agreement state that a party will be released from liability if it fails to sign a promissory note. The arguments by Robert and Korley amount to an attempt to create an ambiguity in a document that they have already admitted to be unambiguous, which we will not allow. Moreover, it is curious that Robert and Korley asked the bankruptcy court and this Court to refer to extrinsic evidence, the promissory notes, to interpret an unambiguous contract.

We note further that Robert and Korley did not provide evidence to dispute the balance owed to each of the Sears Family Members. The bankruptcy court properly allowed the claims in the amount for which they were filed.

*Id.* at 489-90.

The Bankruptcy Appellate Panel also discussed two defenses that were asserted by Korley and Robert.[3] It first discussed certain post-petition breaches that allegedly were committed by the claimants:

Robert and Korley maintain that any liability of the Debtor under the Stock Sale Agreement was discharged as a matter of law based on the Sears Family Members' alleged breach of their implied duties of good faith and fair dealing and Ron Sears's and Rhett Sears's alleged express duties of loyalty to the Debtor set forth in the Stock Sale Agreement. As

---

[3] Other defenses alleged by Korley and Robert in their statement of issues were not argued and were deemed waived.

-10-

grounds for such breaches, Robert and Korley cite to post-bankruptcy support by the Sears Family Members of the Trustee's efforts in assuming executory contracts and closing purchase agreements that were commenced pre-petition. They also refer to the Sears Family Members' "opposition to the Chapter 11 case of AFY," their sponsorship of the Debtor's liquidation and their support for other efforts of the Trustee. Assuming, for the sake of argument, that these duties existed in the first instance, Robert and Korley have failed to show how they were breached in a way that would merit disallowance of the claims. They cite to only post-petition actions of the Sears Family Members as breaches of their duties. But claims in bankruptcy, such as the claims of the Sears Family Members that are at issue here, are determined as of the bankruptcy petition date. See 11 U.S.C. § 502(b) ("the court ... shall determine the amount of such claim ... *as of the date of the filing of the petition* ...") (emphasis added). Moreover, it would defy logic to hold that a claimant would act in bad faith simply by trying to enforce his claim and assist a case trustee in procuring payment of it.

*Id.* at 490-91. Second, the panel discussed a "supervening frustration" theory:

Robert and Korley also maintain that any liability of the Debtor under the Stock Sale Agreement was discharged as a matter of law because "the principal purpose upon which the Stock Sale Agreement was based was frustrated and the basic assumption on which the Stock [Sale] Agreement was made did not occur." They allege that the Stock Sale Agreement is unenforceable because the parties entered into it under the assumption that the Debtor's operations would continue as a going concern and that the payment for the stock would come from the Debtor's cash flow and earnings. Due to the country's unforeseen recession and the withdrawal by the Debtor's lender of an operating line of credit, the Debtor did not continue to operate as a going concerns. [FN5. Robert and Korley presented their supervening frustration theory to the bankruptcy court. The bankruptcy court did not discuss the defense in its written opinion, so we must assume it rejected that theory. We agree with the bankruptcy court's decision.]

Under the theory of discharge by "supervening frustration," a party no longer has the duty to perform under a contract "unless the

language or the circumstances indicate to the contrary" in circumstances "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 265 (1981) (quoted in *Cleasby v. Leo A. Daly Co.*, 221 Neb. 254, 376 N.W.2d 312, 318–19 (1985)); *see also American Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1026 (8th Cir.2010) (citing Restatement (Second) of Contracts § 265).

Robert and Korley claim that the parties would not have entered into the Stock Sale Agreement if the stock purchase price was not going to be paid out of the Debtor's cash flow and earnings, and they cite to a declaration of Robert as support for their argument. Notwithstanding Robert's declaration, Robert and Korley failed to satisfactorily prove a supervening frustration defense. Applying the theory of commercial frustration to the situation here would be akin to allowing any party to be relieved of his contractual duties simply because he is no longer able to pay them, and would mean a debtor is freed from his obligations each time he is unable to reorganize. That is simply not the law. We also note that the Stock Sale Agreement itself recognizes the possibility of the Debtor's bankruptcy when it requires in Paragraph 7.1 that the promissory notes must provide for immediate payment upon the Debtor's bankruptcy.

*Id.* at 491.

Korley and Robert then appealed to the Court of Appeals, but the appeal was dismissed for lack of standing. The Eighth Circuit explained that AFY is "the only party directly and adversely affected by the bankruptcy court's order allowing Claims 8, 9, and 10," and that "[a]ny effect on appellants is indirect, based on their status as shareholders of AFY." *In re AFY*, 733 F.3d 791, 793 (8th Cir. 2013). "Shareholders may not appeal a bankruptcy court decision where they assert only a derivative interest." *Id.* (internal quotes and citation omitted). The Court of Appeals therefore "dismiss[ed] appellant' appeal from the bankruptcy court's order overruling appellants' objections to Claims 8, 9, and 10." *Id.*

-12-

The question of Korley and Robert's standing to appeal was raised earlier before the Bankruptcy Appellate Panel, which concluded that Korley had standing to appeal to the panel from the bankruptcy court's order because he claimed to be a potential creditor of AFY. The panel stated:

> The Sears Family Members argue that, if we affirm the bankruptcy court's disallowance of Korley's Claim No. 26 (which we do), Robert and Korley will lack standing to appeal the bankruptcy court's allowance of the Sears Family Members' claims because Robert and Korley will not be directly affected by the bankruptcy court's decision.
>
> The issue of standing is not material to the outcome of this matter because, even if Robert and Korley have standing, we affirm the bankruptcy court's decision to allow the Sears Family Members' claims. Nevertheless, Korley has standing to challenge the allowance of the Sears Family Members' claims. Until we considered the disallowance of Korley's Claim No. 26 as a part of this appeal, there was a possibility that Korley would be a claimant of the Debtor's estate. [FN6. We do not need to consider whether Robert had standing because Korley also participated in this appeal.]

*In re AFY, Inc.*, 463 B.R. at 491-92. Korley did not attempt to appeal further from the bankruptcy court's disallowance of his Claim No. 26.

In the present case, Korley raised the following objections to the proofs of claim filed by Rhett, Ron, and Dane:

(A)   the Contracts are not binding contracts between Rhet [*sic*] Sears, Ron Sears, and Dane Sears ("RR&D") and Korley because there was no meeting of minds and/or no mutual assent between RR&D and Korley;

(B)   RR&D have no enforceable claims against Korley because RR&D did not substantially perform the Contracts by making good faith and honest efforts to live up to their obligations under the Contracts;

-13-

(C)    RR&D have no enforceable claims against Korley because the purpose of the Contracts wholly failed resulting in failure of consideration;

(D)    Korley was discharged from all liability on the Contracts by the doctrines of Supervening Frustration, Supervening Impossibility, Supervening Impracticability, or any or all of them as provided under Nebraska Law and §261, 263 and 265 of the Restatement (Second) of Contracts;

(E)    Korley was discharged from all liability under the Contracts by material breaches by RR&D of their express fiduciary duties, including their duty of loyalty, under the Contracts;

(F)    Korley was discharged from all liability under the Contracts by material breaches by RR&D of their implied duties of good faith and fair dealing under the Contract in performing and enforcing the Contracts; and/or

(G)    Korley was discharged from all liability under the Contracts because RR&D prevented, hindered, or made performance impossible by Korley under the Contracts, acted in concert to prevent, hinder, and delay and made performance impossible by Korley under the Contracts;

(H)    RR&D aided and abetted each other in preventing, hindering, or making impossible performance by Korley under the Contracts; and

(I)    if RR&D have valid claims against Korley, their proofs claims are not properly filed in accordance with bankruptcy official forms, rules and procedures, they do not claim the lawful amount of principal owing under the Bankruptcy Code ("Code"), they do not claim the lawful interest owing and may also claim unlawful interest on interest.

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 282) (reformatted as a list).

-14-

The bankruptcy court ruled that Korley's objections were precluded by the decision in the AFY case, stating:

> Res judicata prevents "the relitigation of a claim on grounds that were raised or could have been raised in the prior suit." *Banks v. Int'l Union Elec.*, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990) (citation omitted)). Relitigation of a claim is barred under res judicata where "a final judgment was entered by a court of competent jurisdiction, if the same parties (or their privies) and the same cause of action are involved." *Ladd v. Ries* (*In re Ladd*), 450 F.3d 751, 753 (8th Cir. 2006) (citation omitted). A claim is barred "if it arises out of the same nucleus of operative facts as the prior claim." *Banks*, 390 F.3d at 1052 (quoting *Lane*, 899 F.2d at 742 (citations omitted)). "[W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Banks*, 390 F.3d at 1052-53 (quoting *Lane*, 899 F.2d at 744).

*Bryan v. Stanton* (*In re Bryan*), 466 B.R. 460, 465 (B.A.P. 8th Cir. 2012).

Here, the bankruptcy court's order overruling the objection to claims in AFY was a final order. *See, e.g.*, *In re Thomas*, 511 B.R. 89, 92 (B.A.P. 6th Cir. 2014) ("A bankruptcy court's order overruling debtor's objection to claim is a final order for purposes of appeal."). Contrary to the debtor's argument, the bankruptcy court had subject-matter jurisdiction over those objections because any party in interest may object to claims. § 502(a). Robert and Korley's lack of standing to appeal is entirely separate from their standing to file claims objections and did not deprive this court of the authority to rule on those objections.

Korley next argues that the defenses he raises to the claims in this case are distinct from the defenses he had to the claims in AFY's case,

-15-

so that different causes of action are involved. The evidence before the court does not support that argument. Rather, Korley argued in the AFY case that he, and not AFY, was liable for the amounts due under the stock sale agreement. He now attempts to claim he did not understand the terms of the contract when he entered into it, so there was no meeting of the minds and the contract is not valid. In light of the position taken by Korley when he filed this bankruptcy case listing this debt in his schedules, when he filed a motion to modify his child support payments because he owed more than $5 million to these claimants, and when he argued that AFY was not liable on the debt, his arguments now are a little hard to swallow. As the *Bryan* court pointed out in the res judicata discussion cited above, old wine in new bottles – in the form of a new theory of recovery or a new body of law allegedly violated by the defendant – is not sufficient to clear the preclusion bar.

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 403 at CM/ECF pp. 2-3).

The bankruptcy court further ruled that even if res judicata did not preclude Korley's objections, the claimants were entitled to summary judgment. Two related arguments were addressed.

First, the bankruptcy court rejected Korley's argument that the stock sale agreement was an executory contract, stating:

An executory contract is "'a contract under which the obligation of both the [debtor] and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" *Kaler v. Craig (In re Craig)*, 144 F.3d 593, 596 (8th Cir. 1998) (quoting *Northwest Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir. 1977) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973))).

In the stock sale agreement, the claimants agreed to sell their interests in AFY and related companies for cash and, depending on the arrangements with each seller, either the release of a guaranty or

-16-

additional assets such as a vehicle, insurance coverage, and a head of beef for personal use. The claimants surrendered their shares of stock in exchange for promissory notes from Korley and AFY, Inc. The contract also provided for AFY's continued employment of two of the claimants. These terms do not establish an executory contract. The claimants fulfilled their bargain by giving up their interests in AFY. The only unperformed part of the contract is the payment of the amounts due. To the extent Korley asserts that the contract is executory because the employee claimants continue to owe a duty of loyalty, it appears that duty is owed only to AFY, not to Korley. Regardless, such a pending duty would not be enough to render the contract executory for life, which is the logical outcome of Korley's argument. For exemple, [*sic*] the contract provides that Dane Sears shall be a devoted, loyal AFY employee; this duty apparently lasts until his employment with the company ceases. There is no basis for using such a provision to hold a contract executory for that length of time. In this case, the claimants performed their substantive obligation of turning over their stock shares. The only unperformed obligation remaining is owed by the debtor. Therefore, the contract is not executory. There is even less of a basis for finding the promissory notes and accompanying security agreements to be executory. Again, the only performance still owed under those documents is Korley's obligation to pay.

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 403, at CM/ECF pp. 3-4).

Second, the bankruptcy court rejected Korley's argument that a debtor's post-petition defenses (*i.e.*, for alleged breaches of the stock sale agreement) can be asserted by the bankruptcy estate under 11 U.S.C. §558. It stated:

By the same token, the debtor's reliance on § 558 is misplaced. That section provides that all of the defenses available to the debtor shall inure to the benefit of the bankruptcy estate. Korley uses this section to support his arguments concerning the post-petition contractual breaches he wants to pursue against the claimants. However, § 558 covers only the debtor's pre-petition defenses. *See State Bank of Florence v. Miller* (*In re Miller*), 459 B.R. 657, 675 (B.A.P. 6th Cir. 2011) ("[Section 558] preserves to the Debtor defenses . . . he would have had prepetition.");

-17-

*Beach v. Bank of America* (*In re Beach*), 447 B.R.313, 323 (Bankr. D. Idaho 2011) ("[W]hile § 541(a)(1) effectively transfers a debtor's causes of action into the Bankruptcy estate, the debtor still has access to, and may assert, personal defenses.").

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 403, at CM/ECF p. 4).

The bankruptcy court concluded:

Korley states that he "honestly believed" when he filed his bankruptcy petition in February 2010 and when he moved in March 2010 to reduce the amount of child support he had been ordered to pay that he owed the amounts indicated in the promissory notes held by the claimants.[4] He now engages in some creative obfuscation to try to avoid his liability for those debts, but he has raised no genuine issues of material fact as to that liability or the amounts owed.

(*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 403, at CM/ECF p. 5).

## II. Issues Presented on Appeal

Twenty issues have been identified by the appellant:

1.   Did the Bankruptcy Court erroneously grant Summary Judgment allowing Appellees['] Proof of Claims Nos. 2, 4, and 5 in a Contested Matter in which there were genuine issues of material

---

[4] In his bankruptcy schedules, filed on February 2, 2010, Korley admitted that he owed Rhett $2,162,000.00, Ron $2,799,977.00, and Dane $ 234,100.00, and that such debts were not contingent, unliquidated, disputed, or subject to setoff (*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 1, at CM/ECF pp. 8, 22-23). He also stated that AFY, Inc. was a co-debtor to Rhett, Ron, and Dane (*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 1, at CM/ECF p. 27). In a verified complaint filed on April 1, 2010, in the District Court of Brown County, Nebraska, seeking a reduction in his child support obligation, Korley swore that he had recently filed bankruptcy "schedules disclosing ... his liabilities are from $10 to $50 million," that his unsecured creditors included two uncles [*i.e.*, Rhett and Ronald], a sister, a cousin [*i.e.*, Dane], and a grandmother [with claims of] $5,429,214," and that he "has lost all his non-exempt assets or will lose them" (*In re Sears*, Bankruptcy Case No. 10-40277, Doc. 360, at CM/ECF p. 3).

facts and in which Appellees were not entitled to judgment as a matter of law?

2.  Did Appellees satisfy their burdens of proving all of the essential elements of their res judicata defense or all of the essential elements of their collateral estoppel defense to Appellant's Objections to Appellees['] Proofs of Claims Nos. 2, 4 and 5?

3.  Did Appellees satisfy their burdens of proving that in a Contested Matter in the bankruptcy case of AFY, Inc. ("AFY"), case number 10-40875 (the "AFY Contested Matter") the bankruptcy court entered an Order on June 8, 2011 (the "AFY Order") (Doc #493) which bars Appellees [*sic*] Objections to Proofs of Claims Nos. 2, 4, and 5 under either the doctrine of res judicata or the doctrine of collateral estoppel?

4.  In the AFY Contested Matter did the bankruptcy court have subject matter jurisdiction over the merits of Appellant's Objections to the Allowance of Appellees' Claims Nos. 8, 9 & 10 in AFY's Case; and if not were the bankruptcy court's comments in the AFY Contested Matter on the merits of Korley's Objections to Claims Nos. 8, 9 & 10 in the AFY Contested Matter of no preclusive effect or of any legal consequence?

5.  Did the Eighth Circuit or Eighth Circuit BAP have subject matter jurisdiction over the merits of Appellant's Appeal from the AFY Order and if not are any comments on the merits of Appellant's Objections in AFY's Case to Appellee's [*sic*] Claim Nos. 8, 9 & 10 of no preclusive effect in this case and of no legal consequence?

6.  In the AFY Contested Matter, did Korley have the full and fair opportunity to litigate the Objections to Appellee's [*sic*] Proofs of Claims Nos. 8, 9 & 10 in AFY's Case; and if not does the AFY Order have any preclusive effect in this case?

7.  In this case were Appellee's [*sic*] Proofs of Claims 2, 4 & 5 entitled to a presumption of validity and amount?

-19-

8.  In this case, was there a genuine dispute of material fact as to whether there was a meeting of minds or mutual consent to the Stock Sale Agreement and Three Promissory Notes (collectively "Contract") on which Appellee's [*sic*] Proofs of Claims 2, 4 & 5 are based; and if not is the Contract enforceable against Appellant?

9.  In this case is there a genuine dispute of material fact as to whether Appellees failed to substantially perform the Contract by making a good faith and honest endeavor to live up to their contractual obligations?

10. In this case did the purpose of the Contract wholly fail and if so is the Contract not enforceable against Appellant due to failure of consideration?

11. In this case was any liability of Appellant on the Contract discharged by supervening frustration, supervening impossibility, or supervening impracticality?

12. In this case was any liability of Appellant on the Contract discharged by Appellees' material breaches of their express contractual duties to AFY's management or by their fiduciary duties as under the Contract?

13. In this case was any liability of Appellant discharged by Appellees, material breaches of their implied duties under the Contract to perform their contractual obligations and to enforce their contractual rights in good faith and with fair dealing?

14. In this case was any liability of Appellant under the Contract discharged because Appellees prevented Appellant[']s performance under the Contract?

15. In this case did Appellees aid and abet each other in preventing Appellant[']s performance of the Contract?

16.     Is the Contract in this case an executory contract within the meaning of the Bankruptcy Code; if so were Appellees bound to continue performance of the Contract until rejected?

17.     If the Contract in this case was an executory contract was the Contract ever rejected and if not, were Appellees creditors?

18.     In this case is there a triable issue of material fact as to the meaning of the Contract?

19.     Apart from res judicata or collateral estoppel, in this case did Appellees satisfy their burden to prove that with respect to Appellee's [*sic*] Proofs of Claims 2, 4 & 5, and Appellant's Objections to those Proofs of Claims there is no genuine dispute of material fact and Appellees are entitled to judgment allowing such claims as a matter of law?

20.     Apart from whether the Contract was an executory contract, in this case are Appellee's [*sic*] disloyal acts after Appellant's petition was filed defenses to Appellees' claims?

(Filing No. 4, at CM/ECF pp. 3-6).

### *III. Standard of Review*

In bankruptcy proceedings, the district court acts as an appellate court and applies the same standard of review as the court of appeals. *Contemporary Industries Corp. v. Frost*, 564 F.3d 981, 984 8th Cir. 2009). In general, the court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *See In re Nevel Properties Corp.*, 765 F.3d 846, 849 (8th Cir. 2014). The application of res judicata is a legal conclusion that is reviewed de novo. *Nolles v. State Committee for Reorganization of School Districts*, 524 F.3d 892, 901 (8th Cir. 2008).

The court also reviews the bankruptcy court's grant of summary judgment de novo. *Ritchie Capital Management, LLC v. Stoebner*, 779 F.3d 857, 860 (8th Cir.

2015). "Summary judgment was properly granted if, assuming all reasonable inferences favorable to the non-moving party, there is no genuine [dispute] as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 861 (quoting *In re Cochrane*, 124 F.3d 978, 981-82 (8th Cir. 1997)).

Issues committed to the bankruptcy court's discretion are reviewed for an abuse of that discretion. *In re King*, 744 F.3d 565, 569 (8th Cir. 2014). "The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *In re Zahn*, 526 F.3d 1140, 1142 (8th Cir. 2008) (quoting *In re Farmland Indus., Inc.*, 397 F.3d 647, 651 (8th Cir. 2005)).

## *IV. Discussion*

Issues 1 and 19 (whether the bankruptcy court erroneously granted summary judgment in favor of the claimants) are catch-all questions that require no separate discussion. Issues 2-6 concern the preclusive effect of the decision in AFY's bankruptcy case. Issues 7, 8, and 11 (*i.e.*, whether the claims are presumptively valid, whether there was a meeting of the minds when the stock sale agreement was executed, and whether supervening events discharged liability) are issues that were previously decided in AFY's bankruptcy case. Issues 9, 12-15 and 20 involve post-petition defenses that the bankruptcy court refused to consider. Issue 10 (*i.e.*, failure of consideration) was not discussed by the bankruptcy court. Issues 16 and 17 concern the executory contract question that was decided by the bankruptcy court. Issue 18 (*i.e.*, the meaning of the contract) was not presented to the bankruptcy court.

### *A. Res Judicata (Issues 2-6)*

The binding effect of a former adjudication, often generically termed res judicata, can take one of two forms. Claim preclusion (traditionally termed res judicata or "merger and bar") "'bars relitigation

-22-

of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'" *Plough v. West Des Moines Community Sch. Dist.*, 70 F.3d 512, 517 (8th Cir. 1995) (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984)). Issue preclusion (or "collateral estoppel") applies to legal or factual issues "actually and necessarily determined," with such a determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The principles of res judicata generally apply to bankruptcy proceedings. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966).[5]

*In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997).

"Res judicata, as claim preclusion, is broader than the issue preclusion function of collateral estoppel." *SDDS, Inc. v. State of South Dakota*, 994 F.2d 486, 492 (8th Cir. 1993). Claim preclusion "explicitly applies to claims previously litigated as well as those which *might* have been litigated in the previous action," whereas issue preclusion "applies only to issues *actually* litigated." *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 940 n. 13 (8th Cir. 2000) (emphasis in original). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotes and citations omitted). "However, both doctrines are applied only when the party against whom the earlier decision is being asserted had a 'full and fair opportunity' to litigate the issue

---

[5] The res judicata effect of a federal bankruptcy judgment is determined by federal common law. *See In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 330 n. 12 (5th Cir. 2007); *Peloro v. United States*, 488 F.3d 163, 175 n. 11 (3d Cir. 2007).

in question." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983) (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 n. 22 (1982)).

"Claim preclusion will bar a subsequent suit when: '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies.'" *In re Anderberg-Lund Printing Co.*, 109 F.3d at 1346 (quoting *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983). "[W]hether a second lawsuit is precluded turns on whether its claims arise out of the same nucleus of operative facts as the prior claim." *Magee v. Hamline University*, 775 F.3d 1057, 1059 (8th Cir. 2015) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)).

The res judicata doctrine also applies to defenses. *See Jefferson Smurfit Corp. v. United States*, 439 F.3d 448, 451 (8th Cir. 2006) ("Under the doctrine of claim preclusion or res judicata, a party is prohibited from asserting 'a claim or defense in a later proceeding that should have been raised in an earlier proceeding' in which there has been a final judgment.") (quoting *McKenzie Engineering Co. v. NLRB*, 373 F.3d 888, 891 (8th Cir. 2004)); *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir. 1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.") (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

"Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091, 1094 (8th Cir. 1996) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). In the Eighth Circuit, the party asserting collateral estoppel must prove:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*In re Porter*, 539 F.3d 889, 894 (8th Cir. 2008) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

The bankruptcy court ruled that res judicata applies in this case to preclude Korley from raising any objections to the claims of Rhett, Ron, and Dane. In other words, the bankruptcy court determined that claim preclusion applies. On de novo review, I agree that the four essential elements of claim preclusion are satisfied.

First of all, the bankruptcy court's order overruling the objections and Korley and Robert was a final order. *See In re Thomas*, 511 B.R. 89, 92 (6th Cir. B.A.P. 2014) ("A bankruptcy court's order overruling debtor's objection to claim is a final order for purposes of appeal."); *Hernandez v. Neb. Dep't of Health & Human Servs. (In re Hernandez)*, 496 B.R. 553, 555 (8th Cir. B.A.P. 2013) (recognizing that the bankruptcy court's order, which found that the creditor's claim was a priority claim and overruled debtor's objection, was a final order); *Smith v. Pritchett (In re Smith)*, 398 B.R. 715, 720 (1st Cir. B.A.P. 2008) (stating that the bankruptcy court's order overruling an objection to a proof claim was a final order as it had the effect of allowing the claim in the amount filed). Korley's argument to the contrary, that the bankruptcy court's order was not final because it did not specify that the claims were allowed, is not supported by any legal authority. Indeed, the Court of Appeals treated the bankruptcy court's order denying Korley and Robert's objections as an order allowing the claims of Rhett, Ron, and Dane. The fact that the order was held not to be appealable by Korley and Robert does not effect its finality.

-25-

Second, the bankruptcy court had jurisdiction to hear and decide Korley and Robert's objections under 11 U.S.C. § 502(a), which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Because a "party in interest" includes "an equity security holder," 11 U.S.C. § 1109(b), Korley and Robert had standing to object to the allowance of claims as shareholders of AFY, even if they lacked standing to appeal from an adverse ruling on their objections. Korley also claimed to be a creditor, and for that reason was determined by Bankruptcy Appellate Panel to have standing to appeal from the bankruptcy court's allowance of the claims of Rhett, Ron, and Dane (and disallowance of his claim).

Third, the claims made by Rhett, Ron, and Dane in the present case arise out of the same nucleus of operative facts as the claims they made in AFY's bankruptcy case, namely, their sale of stock to AFY and Korley, as joint purchasers. Korley argues that the claims are distinct because in AFY's bankruptcy they were "based on the Stock Sale Agreement but without AFY's signature on promissory notes," whereas "Appellees claims against Korley are based on the Stock Sale Agreement and the signatures of Korley on the Three Promissory Notes." (Filing No. 7, at CM/ECF p. 43). This is a distinction without a difference for res judicata purposes because Rhett, Ron, and Dane can establish their claims in Korley's bankruptcy case on the strength of the stock sale agreement alone, just as they did in AFY's bankruptcy case.

Fourth, and finally, Korley entered an appearance in AFY's bankruptcy case as a "party in interest" objecting to the claims of Rhett, Ron, and Dane.[6] However, the

---

[6]The fact that Korley is jointly obligated with AFY on the stock sale agreement does not mean that he is in privity with AFY for res judicata purposes. *See* Restatement (Second) of Judgments § 49, cmt. b ("A judgment against one obligor under a contract does not terminate the claim against another obligor under the contract.") (citing Restatement (Second) of Contracts § 291); *DKN Holdings LLC v. Faerber*, 352 P.3d 378 (Cal. 2015) ("The liability of each joint and several obligor is separate and independent, not vicarious or derivative. Thus, joint and several obligors are not considered to be in privity for purposes of issue or claim preclusion.") (citations omitted); *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 984 (5th Cir.1990) (borrower's personal lender

Eighth Circuit has held that he was not a "person aggrieved" by the allowance of such claims and therefore did not have standing to appeal the bankruptcy court's order.

A party's inability to appeal is generally recognized as an exception to issue preclusion. *See* Restatement (Second) of Judgments § 28(1) ("Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded" when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action...."); *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) ("If a party has not had an opportunity to appeal an adverse finding, then it has not had a full and fair opportunity to litigate that issue.") (applying New York law); *Standefer v. United States*, 447 U.S. 10, 23 n. 18 (1980) (collateral estoppel doctrine "is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.").

No reason suggests itself as to why this exception should not also apply to claim preclusion, which "is much broader, encompassing a prohibition against relitigation of those matters which, not only, were litigated but, also, of those which *could* have been litigated." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting *Williams v. City of Marksville*, 839 So.2d 1129, 1131 (La.Ct.App. 2003) (emphasis in original)). In fact, the Supreme Court has indicated that "claim preclusion is subject to the same limitation" that there be a full and fair opportunity to litigate. *Kremer*, 456 U.S. at 481 n. 22.

---

liability claims against banks were not barred under the doctrine of res judicata, even though borrower's corporations, which were coborrowers, had settled their claims against the banks in their bankruptcy proceedings); *Putnam Mills Corp. v. United States*, 479 F.2d 1334, 1340 (Ct.Cl.,1973) ("The words 'privity' or 'privy' ... are not necessarily interchangeable between the contract and res judicata contexts."). "Privity does not exist merely because parties happen to be interested in the same question, or in proving or disproving the same state of facts." *Headley v. Bacon*, 828 F.2d 1272, 1277 n. 4 (8th Cir. 1987).

Korley contends that the Eighth Circuit's holding that he had no standing in that court "also means that Korley had no Appellate standing in BAP and that BAP had no subject matter jurisdiction" (Filing No. 7, at CM/ECF p. 29). The bankruptcy appellate panel ruled otherwise, noting that until the disallowance of his Claim No. 26 was affirmed, "there was a possibility that Korley would be a claimant of [AFY's] estate." *In re AFY, Inc.*, 463 B.R. at 491-92. Thus, although the bankruptcy court's decision was not reviewed by the Court of Appeals, it was reviewed, and affirmed, by the Bankruptcy Appellate Panel.

Korley also contends he did not have a full and fair opportunity to litigate because the bankruptcy court denied his motions for a continuance to conduct discovery and for a hearing with live witnesses. In denying the motions, the bankruptcy court explained:

> The court generally agrees with Mr. Strasheim that an opportunity for discovery and cross examination are important elements in any claim objection proceeding, but the hearing on affidavit evidence should not be eliminated. Mr. Strasheim still has over three weeks to conduct initial discovery (and obviously has had many months to have done so). Further, at such a hearing, the Court can determine the complexity of the issues, the efforts of the parties to date, and whether further proceedings are necessary or appropriate under the circumstances. Also, it gives the parties the opportunity to properly frame the issues, reach agreement on various matters and address any contested issues of law. Finally, contrary to movant's assertion that Korley Sears will be prejudiced by having to appear, it is not necessary for him to appear at an affidavit evidence hearing.

(*In re AFY, Inc.*, Bankruptcy Case No. 10-40875, Doc. 386 (text only order).) Subsequently, in denying Korley and Robert's objections to the claims of Rhett, Ron, and Dane, the bankruptcy court stated:

> Mr. Strasheim requested the hearings be postponed to allow time for discovery and that they be set for live testimony. While the court

-28-

generally agrees that time for discovery and live testimony are generally appropriate where there are disputed issues of fact, Mr. Strasheim's motions were denied and the hearing held to determine the extent of any factual disputes and to determine issues of law (Fil. #386).

(*In re AFY, Inc.*, Bankruptcy Case No. 10-40875, Doc. 493, at CM/ECF p. 2 n. 1.) There was no abuse of discretion by the bankruptcy court. *See In re Hecker*, 703 F.3d 1112, 1115 (8th Cir. 2013) ("The decision to grant a continuance of a hearing is within the discretion of the trial court and is only reversible upon showing abuse of discretion."); *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109 (7th Cir. 2014) (bankruptcy court did not abuse its discretion in declining to permit claimant to present oral testimony at summary judgment hearing).

In summary, by appearing as a party in AFY's bankruptcy case, Korley has precluded himself from raising any objections to the transactionally related claims of Rhett, Ron, and Dane in his bankruptcy case. At a minimum, he is precluded from relitigating the same issues. But even if res judicata principles do not apply, the bankruptcy court properly granted summary judgment in favor of the claimants, for the reason which will be discussed below.

### B. Presumption of Validity and Amount of Claims (Issue 7)

Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Korley argues that "Official Form B10 for a proof of claim requires that when interest is included to the amount claimed the Claimant should attach a statement that itemizes the interest," and because "Appellees have included interest but not attached the itemized calculation" they "did not comply with Rule 3001[(a)], which requires that "a proof of claim shall conform substantially to the appropriate Official Form." (Filing No. 7, at CM/ECF pp. 56-57). He makes no argument that the proofs of claim filed by Rhett, Ron, and Dane are

deficient in any other respect or do not constitute prima facie evidence of the validity
(as opposed to the amounts) of their claims.

Rule 3001(c) provides that "[i]n a case in which the debtor is an individual ...
[i]f, in addition to its principal amount, a claim includes interest ... incurred before the
petition was filed, an itemized statement of the interest ... shall be filed with the proof
of claim." Fed. R. Bankr. P. 3001(c)(2)(A). "If the holder of a claim fails to provide
any information required by this subdivision (c), the court may, after notice and
hearing, ... preclude the holder from presenting the omitted information, in any form,
as evidence in any contested matter or adversary proceeding in the case, unless the
court determines that the failure was substantially justified or is harmless...." Fed. R.
Bankr. P. 3001(c)(2)(D)(i). The bankruptcy court did not specifically discuss the
claimants' failure to itemize interest in their proofs of claim, but presumably
considered the omissions harmless. The evidence presented in support of the
claimants' motion for summary judgment supports the amounts of interest claimed.

### C. Formation of Contract (Issue 8)

Korley argues "the evidence shows disputed material facts whether, as Korley
contends, the Contract did not impose liability on AFY for the Deferred Price for the
stock in AFY sold to Korley as Korley contends, or the Stock Sale Agreement did
impose liability on AFY for the stock in AFY sold to Korley as Rhett, Ron & Dane
contend" (Filing No. 7, at CM/ECF pp. 43-44). This argument is meritless because
AFY's liability was conclusively established in AFY's bankruptcy case, and even if
AFY's liability were open to question, it would not affect Korley's personal liability
under the stock sale agreement.

### D. Post-Petition Defenses (Issues 9, 12-15 and 20)

Under 11 U.S.C. § 502(b), a post-petition event does not serve as a basis to
disallow a proof of claim. *See In re Strangis*, 67 B.R. 243, 246 (Bankr. D. Minn.

1986) ("Proper focus of the language regarding disallowance of a claim [under §
502(b)(1)], is on prepetition enforceability, not post-petition enforceability"); *Zilka
v. Bononi (In re Zilka)*, 407 B.R. 684 (Bankr. W.D.Pa. 2009) (holding that debtor's
post-petition waiver defense is of no effect because creditor's claims are determined
as of the date of the bankruptcy filing under § 502(b)(1)). Korley cannot raise post-
petition defenses by invoking 11 U.S.C. § 558. *See In re Genuity, Inc.*, 323 B.R. 79,
83 (Bankr. S.D.N.Y. 2005) (finding § 558 inapplicable because debtors were not
asserting any of their pre-petition defenses); *In re Papercraft Corp.*, 127 B.R. 346
(Bankr. W.D.Pa. 1991) ("Section 558 preserves to the Debtor its prepetition defenses
to causes of action."); *see also* Fed. R. Bankr. P. 3007 ("A party in interest shall not
include a demand for relief of a kind specified in Rule 7001 in an objection to the
allowance of a claim....").

### E. Failure of Consideration (Issue 10)

Korley argues that there was a failure of consideration because after AFY filed
for bankruptcy, Rhett, Ron and Dane "caused [Joseph] Badami to be put in as Chapter
11 Trustee" and "he immediately sold the feedyard and associated farmland" (Filing
No. 7, at CM/ECF p. 54). Korley claims the sale "made any Chapter 11 plan virtually
impossible" (Filing No. 7, at CM/ECF p. 23). This argument appears to be simply
another post-petition defense which cannot be raised under § 502(b).

### F. Supervening Frustration or Impracticability (Issue 11)

Korley also argues that he "was discharged from liability under the Contract
because AFY's 49,000 head feedyard and associated farmland was necessary for his
performance under the Contract" (Filing No. 7, at CM/ECF p. 55). As discussed by
the bankruptcy appellate panel in AFY's bankruptcy case, a party is not relieved of
his contractual duties simply because he is no longer able to pay them. Under the
theory of discharge by "supervening frustration," a party no longer has the duty to
perform under a contract "unless the language or the circumstances indicate to the

contrary" in circumstances "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 265 (quoted in *Cleasby v. Leo A. Daly Co.*, 376 N.W.2d 312, 318-19 (1985)). As also pointed out by the panel, "the Stock Sale Agreement itself recognizes the possibility of [AFY's] bankruptcy ...." *In re AFY, Inc.*, 463 B.R. at 491. Discharge by supervening impracticability "involves essentially the same sorts of determinations." Restatement (Second) of Contracts § 265, cmt. a.

### G. Executory Contract (Issues 16 and 17)

The bankruptcy court fully addressed Korley's arguments that the stock sale agreement is an executory contract, and no additional discussion is required.

### H. Contract Meaning (Issue 18)

Finally, Korley appears to object that the bankruptcy court did not make a specific finding, like it did in AFY's bankruptcy case, that the stock sale agreement is unambiguous. However, he fails to identify any ambiguity. He also failed to make such an argument to the bankruptcy court, and thereby waived the issue. *See, e.g., In re MBA Poultry, L.L.C.*, 291 F.3d 528, 534 n. 3 (8th Cir. 2002) (declining to address argument not raised in the bankruptcy court).

### V. Conclusion

The bankruptcy court did not err in granting summary judgment in favor of the appellees/claimants, Rhett R. Sears and Rhett R. Sears Revocable Trust, Ronald H. Sears and Ronald H. Sears Trust, and Dane Sears, and allowing their claims over the objections of the debtor/appellant, Korley B. Sears.

Accordingly,

-32-

IT IS ORDERED that the bankruptcy court's judgment is affirmed. Judgment shall be entered by separate document.

August 25, 2015.                    BY THE COURT:

                                    *Richard G. Kopf*
                                    Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.